Richard C. POWERS,
Plaintiff, Appellant,

v.

BOSTON COOPER CORPORATION,
Defendant, Appellee.

No. 90–1962.

United States Court of Appeals,
First Circuit.

Heard Feb. 7, 1991.

Decided Feb. 27, 1991.

---

**110**

Frank J. Ciano, Cambridge, Mass., for plaintiff, appellant.

Catherine E. Reuben with whom Jeffrey L. Hirsch and Brown, Rudnick, Freed & Gesmer, were on brief, Boston, Mass., for defendant, appellee.

Before TORRUELLA, SELYA and CYR, Circuit Judges.

SELYA, Circuit Judge.

In this diversity case, 28 U.S.C. § 1332, governed by the substantive law of Massachusetts, plaintiff-appellant Richard C. Powers had three chances to put the ball in play. He struck out. At the last, the district court dismissed Powers' second amended complaint for failure to state an actionable claim. Fed.R.Civ.P. 12(b)(6). Powers says that the strike-out call was a blunder. We find the side was retired in accordance with the rules and, therefore, affirm the dismissal.

The second amended complaint is in two counts. The first count claims breach of an oral employment contract, made in 1960, under which the plaintiff, then thirty-two years old, "was to work for [d]efendant as an outside sales person, year-to-year, until [plaintiff] obtained the age of seventy years." On August 14, 1987, after plaintiff had rendered twenty-seven years of faithful service, "the [d]efendant did [b]reach said Agreement by wrongfully, maliciously, and/or without basis, terminat[ing]" the plaintiff's employment. Powers was fifty-nine years old at the time.

The contract sued upon was never reduced to writing and was in derogation of the Massachusetts statute of frauds.[1] The Supreme Judicial Court has consistently stated that oral contracts for a term of years are proscribed by the statute of frauds because, by definition, they cannot be performed within a year. *See, e.g., Richard Tucker Assoc., Inc. v. Smith,* 395 Mass. 648, 481 N.E.2d 489, 491 (1985) (oral three year lease not enforceable); *Irving v. Goodimate Co.,* 320 Mass. 454, 70 N.E.2d 414, 416 (1946) (employment contract to run more than one year unenforceable unless evidenced by signed memorandum). So, too, an oral contract like this one, lasting until a fixed age more than a year in the future, is similarly proscribed by the statute of frauds. After all, such a contract, though subject to cancellation or defeasance at any time (say, by a party's death), cannot literally be *performed* within the one year statutory period. The authorities, we suggest, conscientiously hew to this distinction. *See, e.g., Ferrera v. Carpionato Corp.,* 895 F.2d 818, 820–21 (1st Cir. 1990) (applying Rhode Island law); *Doherty v. Doherty Ins. Agency, Inc.,* 878 F.2d 546, 552 (1st Cir.1989) (applying Massachusetts law) (dictum); *McMorrow v. Rodman Ford Sales, Inc.,* 462 F.Supp. 947, 948–49 (D.Mass.1979) (applying Massachusetts law); *Johnson Clinic, Inc. v. Huffnagle,* 2 Mass.App.Ct. 837, 310 N.E.2d 628, 629 (1974); *see also* Restatement (Second) of Contracts § 130 comment b, illustration 5

---

1. The statute provides:

    **Actionable contracts; necessity of writing.** No action shall be brought ... [u]pon an agreement that is not to be performed within one year from the making thereof; [u]nless the promise, contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized.

    Mass.Gen.Laws Ann. ch. 259, § 1 (West 1986).

(1979) (oral contract falls within statute of frauds where A promises to work for B and B promises to employ A for five years; although the contract will be discharged if A dies within a year, "the duties cannot be 'performed' within a year"); 2 A. Farnsworth, Contracts 115–16 (1982) (similar); J. Calamari & J. Perillo, Contracts 810 (3d ed. 1987) ("[T]he courts hold that where the contract is phrased in terms of a number of years rather than in terms of a lifetime, death operates as a defeasance of the contract rather than as its fulfillment.") (emphasis omitted). Accordingly, count I of the complaint was, as the district court ruled, defeated by the statute of frauds.

■ The second count also failed to state a claim upon which relief could be granted. There, plaintiff complained that, on the day he was cashiered, he signed a release; that he was induced to do so by fraud and misrepresentation; and that, therefore, the release should "be declared null and void." Although the complaint is silent on the subject, the record suggests that the release was tendered as a condition to plaintiff's receipt of severance pay which the employer was not otherwise obliged to provide.[2]

We have two major problems with this count. In the first place, there can be no actionable claim unless some cognizable harm flowed from the defendant's conduct. *See, e.g., Peckham v. Continental Cas. Ins. Co.*, 895 F.2d 830, 836 (1st Cir.1990) (in insurance "bad faith" case, claimant must show that insurer's conduct, even if wrongful, "proximately caused the harm"); *Manganaro Bros., Inc. v. Gevyn Constr. Corp.*, 610 F.2d 23, 24 (1st Cir.1979) ("under ordinary damage principles, a party cannot, by claiming a breach, recover more than he would have obtained had no breach occurred"). In this instance, because the supposed employment agreement was unenforceable, *see supra*, the plaintiff lost nothing by signing the proffered document. In effect, he released claims he did not have. Ergo, there was no harm.

■ In the second place, fraud and misrepresentation must, under the Civil Rules, be pleaded with specificity. Fed.R.Civ.P. 9(b); *see also McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228–29 (1st Cir. 1980); *Lopez v. Bulova Watch Co.*, 582 F.Supp. 755, 766 (D.R.I.1984). This rule entails specifying in the pleader's complaint the time, place, and content of the alleged false or fraudulent representations. *McGinty*, 633 F.2d at 228. Powers' pleading was totally deficient in this respect. Here, as in *Lopez*, a "fraud count [that] is almost wholly conclusory, and ... lacking in specifics.... is too vague to meet the Rule 9(b) benchmark." *Lopez*, 582 F.Supp. at 766. Dismissal was, therefore, proper.

Appellant makes three last-ditch requests, none of which we can honor. First, he asks that we read into his second amended complaint unpled facts, contradictory to the facts actually set forth. Such an entreaty flies in the face of the jurisprudence of Rule 12(b)(6). *See, e.g., Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989) (on motion to dismiss for failure to state a claim, court "must accept all well-pled factual averments as true"). Appellant's next request, that we mull several theories raised for the first time on appeal,[3] is equally unavailing. "[W]e have regularly declined to consider points which were not seasonably advanced below." *Clauson v. Smith*, 823 F.2d 660, 666 (1st Cir.1987) (listing other cases). There is no valid reason to abandon our settled praxis on this occasion.

■ Appellant's final request—that we direct the district court to allow a further amendment to the complaint—strikes no more responsive a chord. For one thing, the district court gave Powers three chances to plead his case. That should have been ample. Though hope may spring eternal, a trial judge need not allow a litigant—particularly a counselled litigant—an infinite number of chances to state an actionable claim. For another

**2.** At oral argument in this court, Powers' counsel acknowledged that Powers received, and has not returned, the severance pay.

**3.** We see no need to enumerate all the straws at which Powers' counsel belatedly grasped.

thing, Powers never asked the district court for a fourth opportunity to replead. Our rule in such circumstances is clear:

> When, in the ordinary case, "the pleader has stood upon his pleading and appealed from a judgment of dismissal, amendment will not normally be permitted ... if the order of dismissal is affirmed."

*Rivera–Gomez v. de Castro*, 843 F.2d 631, 635–36 (1st Cir.1988) (quoting 3 J. Moore, Moore's Federal Practice ¶ 15.11 at 15–109 (1983)). This case falls squarely within the rule, not within what has been termed "the long-odds exception" to it. *Dartmouth Review*, 889 F.2d at 23. As we have written in comparable circumstances: "Finality is a critically important concept in our system of jurisprudence. At some point, battles must end." *Id.* We have reached that point in the instant case.

The ball game is over. For the reasons stated, the judgment below must be

*Affirmed.*